UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| USCOC OF GREATER MISSOURI, L.L.C., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV896 CDP |
| | ) | |
| VILLAGE OF MARLBOROUGH, MISSOURI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff U.S. Cellular is seeking a court order that would allow it to build a cell phone tower on an abandoned McDonald's lot located in the Village of Marlborough, Missouri. Defendant Village of Marlborough denied U.S. Cellular's application to build a tower on the site, and refused to grant U.S. Cellular a variance from the Village's setback requirements. U.S. Cellular's eight-count complaint alleges that the Village's zoning regulations, and their application to U.S. Cellular, violated the Federal Telecommunications Act, the Constitution, and Missouri law.

The Village has moved to dismiss all counts of U.S. Cellular's complaint. Because I conclude that U.S. Cellular has pleaded facts that negate any claim that the Village effectively prohibited the provision of wireless services or discriminated against wireless providers under the Federal Telecommunications

Act, I will grant the Village's motion to dismiss Counts I, II, and V, which make those claims. I will, however, deny the Village's motion with respect to U.S. Cellular's claims that the Village failed to support its decisions with substantial evidence in Counts III and IV, and with respect to U.S. Cellular's constitutional and state law claims in Counts VI through VIII.

## I. Allegations of the Complaint

The following facts are based on the allegations in U.S. Cellular's amended complaint and on its attached exhibits. U.S. Cellular is a wireless telecommunications provider. In 2005, U.S. Cellular decided to build a cell phone tower in the Village of Marlborough so that it could fill a gap in its cell phone coverage of the area. U.S. Cellular investigated multiple sites within the Village that would provide the necessary coverage, and eventually settled on a site owned by McDonald's Corporation. U.S. Cellular determined that the McDonald's site was the best location for the new tower.

U.S. Cellular approached the Village about obtaining the necessary approvals and permits to build the tower on the McDonald's site. In response, the Village suggested that U.S. Cellular look, instead, into building the tower on property owned by the Village. The Village, through its attorney, told U.S. Cellular that the Village zoning regulations required that U.S. Cellular build its tower on property owned by the Village. Further, the Village told U.S. Cellular

that all necessary permits and approvals would be given on an expedited basis for the Village site, and that U.S. Cellular's application, if any, to build on the McDonald's site would not be approved. If it built the tower on Village property, U.S. Cellular would have to lease the property from the Village and pay rent. Because U.S. Cellular thought the economic terms demanded by the Village were unreasonable, and because the Village site was not a suitable location for the new tower, U.S. Cellular decided to pursue an application to build the tower on the McDonald's site.

The Village's zoning regulations require different application and approval procedures depending on the proposed location of a cell phone tower. If U.S. Cellular chose to build a tower on Village-owned property, it would need to obtain a lease agreement approved by the Village. To build on private property like the McDonald's site, however, U.S. Cellular would need to obtain an administrative permit or a conditional use permit. To obtain an administrative permit, an applicant must submit an application to the Village Building Commissioner along with a $2000 deposit. An applicant must also submit a detailed site plan, showing proposed improvements, the zoning categories of surrounding properties, and required setbacks, among other things.

On July 20, 2007, U.S. Cellular applied for an administrative permit to construct a "disguised support structure" on the McDonald's site. The proposed

cell phone tower was to be disguised as a 150-foot tall flagpole. As per the Village's rules, U.S. Cellular submitted a $2000 fee with the application. On September 6, 2007, the Village told U.S. Cellular that the application was incomplete, and would be denied. The Village told U.S. Cellular to submit a revised application, with a site plan "consistent with the applicable ordinances at this location or another location that would meet applicable approval requirements." On September 10, 2007, the Village denied U.S. Cellular's application.

On November 30, 2007, U.S. Cellular submitted a revised site plan. On December 3, 2007, the Village told U.S. Cellular that it needed to file a new application and another $2000 fee. U.S. Cellular complied, and re-submitted its revised site plan, along with other pieces from its first application and a new fee on February 1, 2008. Through a letter dated February 21, 2008, the Village informed U.S. Cellular that the revised application had been denied.

The Village cited numerous reasons for the denial. First, the Village determined that the tower did not meet the requirements of a "disguised support structure" under the Village Code. Second, the Village found that U.S. Cellular's plan violated the Code's setback requirements. Third, the Village found that the application failed to contain plans for sufficient landscape materials or other screening required under the Code to "conceal" equipment. Finally, the Village

determined that the application failed to show a parking area as required by the Code and that required site plan and security issues were not addressed.

On March 21, 2008, U.S. Cellular appealed the Village's decision. That same day, and in the same document, U.S. Cellular applied for a variance from the Village's setback requirements. In support of its request for variances and appeal, U.S. Cellular argued that (1) the Village incorrectly interpreted various sections of the Village Code; (2) the Village violated U.S. Cellular's due process rights under the federal and Missouri constitutions, (3) the denial was "arbitrary, capricious, and an abuse of discretion"; (4) the denial violated the Federal Telecommunications Act; and (5) the Village unlawfully required U.S. Cellular to pay duplicate fees.

At the time U.S. Cellular submitted the petition for variances and appeal, the Board of Adjustment was not fully formed. The Village Board of Trustees appointed members to act on the Board of Adjustment some time after U.S. Cellular filed its appeal. On May 22, 2008, the newly-constituted Board held a hearing on U.S. Cellular's petition. At that hearing, the Village attorney presented the case against U.S. Cellular and called witnesses. The Village attorney also advised the Board about whether it should grant or deny U.S. Cellular's petition. Immediately following the hearing, the Village attorney gave the Board a typed, seventeen-page document entitled "Findings of Fact." The document was

prepared before the hearing, yet it cites to the testimony of witnesses who testified live at the hearing. The Board adopted these pre-prepared findings and denied U.S. Cellular's petition for variances and appeal. U.S. Cellular alleges that the Board adopted the "Findings of Fact" without ever reading or reviewing the document.

In the Findings of Fact, the Board explained why it denied U.S. Cellular's petition for variances and appeal. The Board found that the request for variances asked for a major departure from the setback requirements, and not a minor deviation. Of the seventeen-page document, six pages were dedicated to the Board's legal conclusions. The Board concluded that: (1) the setback requirements were lawful; (2) the proposed flagpole did not meet the requirements of a "disguised support structure"; (3) the Village Code requires that equipment related to a cell phone tower be underground; (4) U.S. Cellular's application failed to include required information; (5) other requirements of the Village Code (landscaping and disguising of equipment) were not met; and (6) the denials by the Village did not violate the Village Code, the Constitution, Missouri law, or the Federal Telecommunications Act.

U.S. Cellular filed its complaint on June 20, 2008 and added new counts on August 19, 2008. The eight-count amended complaint asks for a declaratory judgment that the Village's zoning regulations, on their face and as applied to U.S.

Cellular, violate the Federal Telecommunications Act. The complaint further asks for a declaratory judgment that the zoning regulations, as applied to U.S. Cellular, violate the Constitution. U.S. Cellular also seeks a court order compelling the Village to issue an administrative permit allowing it to build a tower on the McDonald's site. On April 23, 2009, the Village filed a motion to dismiss for lack of subject matter jurisdiction, claiming that U.S. Cellular no longer has a legally cognizable interest in the McDonald's site. That motion has not been fully briefed at this time.

## II. <u>Discussion</u>

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are construed in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Under notice pleading practice, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although specific facts are not necessary, the plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). A plaintiff's obligation to provide the "grounds" of his "entitlement to

relief" requires more than labels and conclusions. *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. *McDonald v. Nelnet, Inc.*, 477 F. Supp. 2d 1010, 1012 (E.D. Mo. 2007); *Deerbrook Pavilion, LLC, v. Shalala,* 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Because the Findings of Fact is attached as an exhibit to U.S. Cellular's complaint, I may consider it in ruling on the motion to dismiss. *See Centers v. Centennial Mortgage., Inc.,* 398 F.3d 930, 933 (7th Cir. 2005) (a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to relief).

## A.  Claims under the Federal Telecommunications Act

Congress enacted the Federal Telecommunications Act of 1996 (TCA) "to foster competition among telecommunications providers, to improve the quality of their services, and to encourage the rollout of new technologies without delay." *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment of the City of Des*

*Moines*, 465 F.3d 817, 820 (8th Cir. 2006) (citations omitted).  To that end, Congress focused on removing impediments imposed by local governments upon the building of cell phone towers within their jurisdictions.  *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 115 (2005).  While Congress wanted to reduce local government interference with tower construction, it specifically preserved local authority over decisions about tower placement, construction, and modification.  *USCOC of Greater Iowa*, 465 F.3d at 820; 47 U.S.C. § 332(c)(7)(A) (2006) ("Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.").  This authority, however, is subject to explicit limitations.  Section 332(c)(7)(B) of the TCA provides, in relevant part:

> (i)  The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –
>
>> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>>
>> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
>
> .        .        .
>
> (iii)  Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B) (section (ii) omitted).

U.S. Cellular makes claims under three subsections of § 332(c)(7)(B):

Count V raises a claim for unreasonable discrimination under § 332(c)(7)(B)(i)(I);

Count I raises a claim for the prohibition of personal wireless services under §

332(c)(7)(B)(i)(II); and Counts III and IV raise a claim for lack of substantial

evidence under § 332(c)(7)(B)(iii) .[1]

### 1.    Count I: Prohibition of Personal Wireless Services under 47 U.S.C. § 332(c)(7)(B)(i)(II)

Count I alleges that the Village's zoning regulations, including the setback

requirements, violate § 332(c)(7)(B)(i)(II) of the TCA, which forbids a local

government from imposing regulations that "prohibit or have the effect of

prohibiting the provision of personal wireless services."  To support this claim,

U.S. Cellular alleges that both the Village's requirements for an administrative

permit – including its requirement that U.S. Cellular pay two application fees  –

and the Village's setback requirements, are unduly burdensome and vague.

---

[1]The Village argues that U.S. Cellular's claims under the TCA are untimely.  The TCA requires that actions challenging local zoning decisions be commenced within 30 days of such decisions.  47 U.S.C. § 332(c)(7)(B)(v) (2006).  According to U.S. Cellular, the amended complaint alleges that the Village denied U.S. Cellular's first application on September 10, 2007, and denied a revised application on February 21, 2008.  U.S. Cellular filed its complaint on June 20, 2008, more than thirty days after both denials.  I find, however, that the final decision on U.S. Cellular's application to build on the McDonald's site was May 22, 2008, when the Board of Adjustment denied U.S. Cellular's appeal and request for a variance.  This is the relevant date for purposes of this action.  U.S. Cellular's complaint was filed within thirty days of this final decision.

According to U.S. Cellular, these requirements, in addition to the Village's "unfettered discretion" in determining whether to grant or deny permits, amounts to a prohibition of wireless services under the TCA.

Both U.S. Cellular and the Village agree that the test for a facial challenge of zoning regulations under § 332(c)(7)(B)(i)(II) is articulated in *Second Generation Properties v. Town of Pelham*, 313 F.3d 620 (1st Cir. 2002). In that case, the court explained that a facial prohibition claim can be established by showing either (1) the impossibility of obtaining a permit through the applicable local ordinances; or (2) that no alternative sites exists that the provider could use to fill a gap in service.[2] *Id*. at 630. U.S. Cellular argues that the complaint adequately alleges a facial prohibition claim under this test because it "alleges that the Village's ordinances are impossible to meet" and "that the McDonald's site was the best site, creating an inference . . . that the McDonald's site was the only viable alternative." This is not a fair reading of the complaint. Nowhere in the complaint does U.S. Cellular allege or even remotely suggest that the Village's zoning regulations are impossible to meet, or that the McDonald's site was the only viable location for the tower. In fact, U.S. Cellular affirmatively alleges facts

---

[2]As reflected in the parties' briefs, there is some debate among the courts as to whether a telecommunications provider may sue under this section based only upon an alleged gap in its own wireless service – as opposed to a gap in the service of all telecommunications providers. The Eighth Circuit has not ruled on this issue, and I do not find that it is necessary for me to do so here.

that negate both of these claims. Rather than alleging that the Village's zoning regulations are impossible to meet, U.S. Cellular alleges that the regulations "more easily allow a cellular telecommunications provider to construct a support structure on Village-owned property than on privately-owned property." Rather than alleging that no alternative sites exist, U.S. Cellular alleges that it investigated "various sites in the area that would provide the necessary coverage," and that the McDonald's site was the "best suited" for the tower. Contrary to U.S. Cellular's suggestion, an allegation that the McDonald's site was the best suited site does not create an inference that the McDonald's site was the only viable alternative. In fact, it negates such an inference.

Although U.S. Cellular's facial challenge of the zoning regulations fails, a claim might be made under § 332(c)(7)(B)(i)(II) based upon the Village's application of its regulations to U.S. Cellular. Whether the Village's decision effectively prohibits the provision of personal wireless services under § 332 is a question of law. *USCOC of Greater Iowa,* 465 F.3d at 824. A claim of effective prohibition based on a specific decision of a zoning board requires a showing that a wireless provider adequately investigated "all feasible alternative sites." *Id*. at 825. Further, the provider must show that it gave "serious consideration" to other locations. *Id*. In the Eighth Circuit, U.S. Cellular must show that the McDonald's site "was the only location for a cellular tower that would remedy [U.S. Cellular's]

- 12 -

coverage issue." *Id*. If U.S. Cellular cannot show this, then the Village's denial, as a matter of law, did not "result" in the "prohibition" of wireless services under § 332(c)(7)(B)(i)(II).

U.S. Cellular's as-applied challenge fails for the same reason its facial challenge must fail: U.S. Cellular has affirmatively alleged facts establishing that the Village's denial was not a prohibition of personal wireless services under the TCA. U.S. Cellular has alleged that it investigated multiple sites that would have provided the necessary coverage, and that the McDonald's site was simply the best suited of those sites. U.S. Cellular also alleged that it chose not to build on Village property because the economic terms offered were unreasonable. These facts, taken together, negate a claim under § 332(c)(7)(B)(i)(II). *See USCOC of Greater Iowa*, 465 F.3d at 825 (where a provider rejected other locations without giving them serious consideration, and where the preferred location was not the only location that would remedy the coverage issue, there is no prohibition of the provision of wireless services under the TCA); *see also USCOC of New Hampshire RSA # 2, Inc. v. Town of Bow, NH,* 493 F. Supp. 2d 199, 214 (D.N.H. 2007) (where alternative sites for a tower were available, and company rejected those sites based on business judgment about where to best locate a facility, there is no claim for effective prohibition); *Cellco P'ship v. Town of Grafton, Mass.*, 336 F. Supp. 2d 71, 85 ("A single denial of an application based on a supportable

finding that another location was available would almost certainly fall short of an effective prohibition of wireless services."). Because U.S. Cellular has failed to allege facts that would entitle it to relief under § 332(c)(7)(B)(i)(II), under both a facial and as-applied theory, I will dismiss Count I.

## 2. Count III and Count IV: Lack of Substantial Evidence under 47 U.S.C. § 332(c)(7)(B)(iii)

The TCA requires that any decision by a state or locality denying permission to build a cell phone tower must be supported by substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iii) (2006). "Substantial evidence is less than a preponderance, but more than a scintilla." *Sprint Spectrum L.P. v. County of Platte, Mo.*, 2007 WL 2994362 at *3 (W.D. Mo. Oct. 11, 2007) (citations omitted). A decision is supported by substantial evidence if a reasonable person would accept the evidence in the record "as adequate to support a conclusion." *Id.*; *see also USCOC of Greater Iowa*, 465 F.3d at 820 (under the provisions of the TCA, courts do not have authority to hear a zoning case anew, "but only to review the 'written record' for 'substantial evidence' supporting the decision of the local authority."). Under the TCA, the burden is on the party seeking to overturn the zoning decision to demonstrate that the decision was not supported by substantial evidence. *USCOC of Greater Iowa*, 465 F.3d at 821.

U.S. Cellular alleges that the Village lacked substantial evidence when it denied U.S. Cellular's application to build a tower on the McDonald's site, and

when it affirmed this denial on appeal (Count III), and also when it denied U.S. Cellular's application for variances from the setback requirements (Count IV). The complaint alleges that "no substantial evidence on the written record" supports these three decisions, and that the Village "misinterpreted and mis-applied requirements" when it denied U.S. Cellular's applications and appeal.

Although the Village set out its reasons for denying U.S. Cellular's application in the detailed "Findings of Fact" attached to the complaint, I do not have a full record of the proceedings. U.S. Cellular has alleged that the Village misapplied requirements when it denied the application and when it upheld the denial on appeal. If these allegations prove true, U.S. Cellular may be entitled to relief. At this stage, these allegations are enough to state a claim, and I will not dismiss Count III or Count IV.

### 3. Count V: Unreasonable Discrimination under 47 U.S.C. § 332(c)(7)(B)(i)(I)

Section 332(c)(7)(B)(i)(I) of the TCA prohibits a local government from unreasonably discriminating among providers of functionally equivalent services. "[T]he [TCA] explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed. Any discrimination need only be reasonable." *AT&T Wireless PCS, Inc. v. City Council of Va. Beach*, 155 F.3d 423, 427 (4th Cir. 1998). Courts have held that it may be reasonable for a local governments to consider location when deciding whether to approve an

application for tower construction. *See, e.g. Omnipoint Commc'ns, Inc. v. City of White Plains*, 175 F. Supp. 2d 697, 718 (S.D.N.Y. 2001) ("Under the TCA, local governments may reasonably consider the location of the cell tower in deciding the nature of the inquiry to be made, and whether to approve the application for construction."), *rev'd on other grounds,* 430 F.3d 529 (2d Cir. 2005). In order to prevail under § 332(c)(7)(B)(i)(I), U.S. Cellular "must show that defendants discriminated among providers of functionally equivalent services and that these providers were treated unequally." *Omnipoint Commc'ns*, 175 F. Supp. 2d at 717.

U.S. Cellular alleges that the Village's zoning regulations more easily allow for towers to be built on Village-owned property than on privately-owned property. A company willing to locate a tower on Village-owned property would provide functionally equivalent services as a company not willing to locate a tower on Village-owned property, yet the Village treats these two types of providers differently. This, according to U.S. Cellular, is unreasonable discrimination under the TCA.

While discrimination may be considered impermissible under the TCA where a local government favors one provider by allowing it to build a tower at a particular location, at the exclusion of other providers, here, there is no allegation that the Village actually treated another telecommunications provider differently from U.S. Cellular. *Ogden Fire Co. No. 1 v. Upper Chichester TP.* 504 F.3d 370,

392 (3d Cir. 2007). U.S. Cellular has not alleged that any other provider was granted a permit to build a cell phone tower at the McDonald's site, or any other site within the Village. Indeed, U.S. Cellular's complaint makes no reference to any other telecommunications provider or tower within the Village. There is no unreasonable discrimination under the TCA where there is no evidence that a local zoning board treated another competitor differently. *See, e.g. Sprint Spectrum L.P. v. Bd. of Zoning Appeals of Town of Brookhaven*, 244 F. Supp. 2d 108, 117 (E.D.N.Y. 2003) (no unreasonable discrimination under the TCA where there was no evidence that the local government allowed one of Sprint's competitors to build a tower in the same proposed site area). Because U.S. Cellular has not alleged that the Village allowed a competitor to build on the McDonald's site, or any other similar site, U.S. Cellular's claim for unreasonable discrimination must fail. Accordingly, I will dismiss Count V of the complaint.

### 4.    Count II: Barrier of Entry under 47 U.S.C. § 253(a)

In addition to its claims under § 332, U.S. Cellular has brought a claim under § 253 of the TCA. Under § 253(a) of the TCA, "[n]o state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a) (2006). Congress enacted § 253 in order to preempt state and local regulations that work to maintain the monopoly

status of a telecommunications provider.  *Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 576 (9th Cir. 2008).  The Eighth Circuit has held that a plaintiff suing a municipality under section 253(a) "must show actual or effective prohibition, rather than the mere possibility of prohibition."  *Level 3 Commc'ns, L.L.C. v. City of St. Louis, Mo.* 477 F.3d 528, 532 (8th Cir. 2007).  Under this standard, U.S. Cellular "need not show a complete or insurmountable prohibition," but it must show "an existing material interference with the ability to compete in a fair and balanced market." *Id*. at 533.  The analysis under § 253 is similar to that under § 332: under both, U.S. Cellular must establish either an outright prohibition or an effective prohibition of telecommunications services.

U.S. Cellular alleges that the Village's zoning regulations, on their face, "may prohibit or have the effect of prohibiting," and, as applied to U.S. Cellular, "have precluded U.S. Cellular from" providing telecommunications services. There are two problems with U.S. Cellular's pleadings.  First, U.S. Cellular's allegation that the zoning regulations, as applied, "have precluded" its ability to provide telecommunications does not allege a cause of action under § 253, and is simply not supported by the factual allegations in the complaint.  Section 253 may be used to challenge zoning regulations on their face, but is not the proper section to challenge an application of a zoning regulation.  *See Sprint Telephony*, 543 F.3d at 575-80 (explaining the interaction between § 253 and §332 and applying § 253

to a facial challenge of regulations). U.S. Cellular admits as much in its response, pointing out that § 332 applies to a locality's decisions, and § 253 applies to regulations and requirements. U.S. Cellular's complaint alleges that the Village's enforcement of its regulations precluded its ability to provide telecommunications under § 253. These allegations do not suffice to state a claim under § 253.

Second, U.S. Cellular's allegation that the regulations, on their face, "may" prohibit or have the effect of prohibiting wireless services does not meet the standard set forth by the Eighth Circuit in *Level 3*, which requires a showing (and, thus, an allegation) that the challenged regulations actually prohibit the provision of wireless services. *See, e.g., Sprint Telephony*, 543 F.3d at 579-80 ("If an ordinance required, for instance, that all facilities be underground and the plaintiff introduced evidence that, to operate, wireless facilities must be above ground, the ordinance would effectively prohibit it from providing services.").

Even if I were to read U.S. Cellular's complaint as alleging actual prohibition, U.S. Cellular has affirmatively pleaded facts that negate such a claim. U.S. Cellular has recited the language of the statute, but has not alleged any facts to support a claim that the Village's zoning regulations actually prohibit it from providing wireless services. In fact, U.S. Cellular has alleged that the regulations make it easier to build in certain sites, and that the McDonald's site, while best suited for its new tower, was merely one of multiple sites that would remedy its

coverage gap.  U.S. Cellular does not allege any facts to support an allegation that the zoning regulations work to actually prohibit wireless services.  U.S. Cellular has not alleged facts that would support a claim under § 253.  Accordingly, I will dismiss Count II.

## B.  Claims under the Federal Constitution

U.S. Cellular alleges that the Village's zoning regulations, on their face and as applied, violate U.S. Cellular's constitutional rights to equal protection and due process.  In 42 U.S.C. § 1983, Congress has created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  *Town of Castle Rock, Colo. v. Gonzales* 545 U.S. 748, 755, (2005).  The Village argues that U.S. Cellular's constitutional claims are unripe because U.S. Cellular failed to exhaust state judicial remedies before coming to this court.  The Supreme Court has held that, in order for a takings claim to be ripe, a landowner must have sought compensation from the state through available state procedures. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S.172, 194-95 (1985).  The Eighth Circuit has applied the *Williamson* ripeness requirement to procedural due process, substantive due process, and equal protection claims relating to land use disputes. *USCOC of Greater Missouri, LLC v. City of Ferguson*, No. 4:07CV1489 JCH, 2008 WL 2065033, at *6 (E.D. Mo. May 14, 2008).  In *City of Ferguson*, this

court discussed the application of the *Williamson* ripeness requirement to claims similar to those made by U.S. Cellular here. *Id.* There, the court dismissed the plaintiff's constitutional claims because it found them to be unripe. The Village argues that the same analysis should apply here. I disagree.

In *City of Ferguson*, the plaintiff made a specific claim under the takings clause, and all of the plaintiff's constitutional claims asked for damages. Complaint at 13, *USCOC of Greater Missouri, LLC v. City of Ferguson*, No. 4:07CV1489 JCH (E.D. Mo. Aug. 21, 2007). Here, U.S. Cellular has not made a takings claim, nor has it asked for damages. U.S. Cellular is only asking for declaratory and injunctive relief. The *Williamson* ripeness requirement does not apply, because there is no claim of takings, nor claims from damages that might be a takings claim in disguise. For example, in *City of Ferguson* the court specifically noted that the *Williamson* exhaustion requirement does not apply when an equal protection claim is based on a request for declaratory relief that would evaporate if the government body treated everyone equally. *City of Ferguson*, 2008 WL 2065033, at *6. This is because there is no "disguised takings" claim where there is no claim for damages. The same logic is true for U.S. Cellular's due process claims: a plaintiff is not required to exhaust state remedies where there is no takings claim, or where there is no claim for damages. Under the takings clause, private property cannot be taken for public use without

just compensation.  U.S. Const. amend. V. This compensation can occur after the taking.  *See Williamson*, 473 U.S. at 194 ("Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking.").  A claim against a state or local government for a taking, or damages related to land use decisions, should go through the available state procedures, because the state must have an opportunity to compensate after-the-fact.  *See Williamson*, 463 U.S. at 194-95 ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation.").  Here, U.S. Cellular has not made a takings claim, and its constitutional claims do not ask for damages.  The *Williamson* ripeness requirement does not apply.

### 1. Count VI: Violation of Equal Protection

U.S. Cellular has alleged that the Village's different treatment of telecommunications providers willing to locate a tower on Village-owned property and those unwilling to do so violates equal protection under 42 U.S.C. § 1983. The Fourteenth Amendment prohibits states from "deny[ing] any person within its jurisdiction the equal protection of the laws."  The Equal Protection clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Where, as here, the classification alleged (telecommunications providers'
willingness to locate a tower on Village-owned property) is not a protected class
nor a quasi-protected class, rational basis review is applied. *Id.* at 440-441.
Rational basis review requires that the classification be rationally related to a
legitimate state interest.

The Village argues that U.S. Cellular has failed to state a claim for equal
protection because there is no allegation that U.S. Cellular was treated differently
from similarly situated providers. I disagree. While U.S. Cellular has failed to
make a claim under the TCA for unreasonable discrimination (because, as
discussed above, such a claim requires an allegation that another
telecommunications provider was actually treated more favorably), it has
sufficiently alleged facts that allege a constitutional equal protection claim. U.S.
Cellular has alleged that the Village's differential treatment of providers based on
whether they are willing to construct a tower or support structure on Village-
owned property is "irrational and unrelated to any legitimate state objective." The
Village argues that the discrimination between providers here is rationally related
to a legitimate governmental interest. This may turn out to be the case, but at this
stage I cannot dismiss this count because U.S. Cellular may lose on the merits.
Because I find that U.S. Cellular has adequately pleaded an equal protection claim,
I will not dismiss Count VI.

## 2. Count VII: Violation of Due Process

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." To have a property interest, a person must have "more than a unilateral expectation," but, rather a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Such entitlements are not created by the Constitution. They are created and defined by an independent source such as state law. *Town of Castle Rock, Colo. v. Gonzales* 545 U.S. 748, 756 (2005).

U.S. Cellular claims that it had a property interest in an administrative permit. The Village disagrees, arguing that issuance of an administrative permit is discretionary, giving U.S. Cellular an expectancy, not a protected property interest. This is a difficult legal question, but, after consideration of the authorities cited by both parties, I find that U.S. Cellular has sufficiently alleged that it had a property interest in obtaining a permit. U.S. Cellular alleged that it complied with all applicable regulations when it submitted both its initial and its revised applications. Under Missouri law, "[t]he issuance of a building permit is a ministerial act which the building commissioner may not legally refuse to perform if the requirements of the ordinance have been met." *Wolfner v. Bd. of Adjustment of City of Frontenac*, 672 S.W.2d 147, 150 (Mo. Ct. App. 1984). U.S. Cellular's application for a variance does not clearly negate its claim that it complied with

the application requirements. This is not to say that U.S. Cellular had a property interest in a permit as a matter of law. Facts may be brought out in discovery to show that U.S. Cellular did not, in fact, comply with the Village's zoning regulations. But because U.S. Cellular has alleged that it complied with the requirements of the Village, I find that it has alleged a property interest in obtaining an administrative permit.

### a. Procedural Due Process

U.S. Cellular alleges that the Village's denial of its application violated U.S. Cellular's right to due process. Under Eighth Circuit law, "[t]o establish a procedural due process violation, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without sufficient process, *i.e.*, without due process." *Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005) (citation omitted). U.S. Cellular appears to be alleging that the hearing was a sham. Specifically, U.S. Cellular alleges that the Board was formed after U.S. Cellular filed its appeal, and did not even read the Findings of Fact before approving them. This is enough to allege a procedural due process claim.

### b. Substantive Due Process

U.S. Celullar also alleges that the Village's decision violated U.S. Cellular's substantive due process rights. The Eighth Circuit takes a "very restricted view as to when state and local land use planning, zoning, and licensing decisions violate

an aggrieved party's federal right to substantive due process." *Martin v. City of Brentwood*, 200 F.3d 1205, 1206 (8th Cir. 2000). Thus, after demonstrating a constitutionally protected property interest, "the plaintiff must allege something more than that the government decision [negatively impacting such an interest] was arbitrary, capricious, or in violation of state law." *Id*. at 1206 (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992). Rather, to succeed, a § 1983 plaintiff must demonstrate that the action complained of was "truly irrational." *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070 (8th Cir. 1997).

U.S. Cellular has alleged that the Village's decision was "truly irrational." I find that U.S. Cellular has sufficiently alleged enough facts at this stage to survive a motion to dismiss on this claim. Because U.S. Cellular has alleged sufficient facts on its due process claims, I will not dismiss Count VII.

## C. Count VIII: State Law Claims

U.S. Cellular claims that the Village "violate[d] state law, including but not limited to the Missouri Administrative Procedure Act." While U.S. Cellular has failed to identify the part of the Missouri Administrative Procedure Act it alleges that the Village has violated, and fails to request relief under Missouri law, I will not dismiss this claim at this time. However, if this case survives defendant's

pending motion to dismiss for subject matter jurisdiction, U.S. Cellular may need to amend its complaint to specify the exact law alleged to have been violated.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#9] is GRANTED IN PART and DENIED IN PART. Count I, Count II, and Count V are DISMISSED with prejudice. Defendant's motion is denied in all other respects. I will rule on the pending motion to dismiss for lack of subject matter jurisdiction before setting a Rule 16 conference in this case.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of April, 2009.